**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
KAS L. GALLUCCI (SBN 288709)
*kas@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
LILACH HALPERIN (SBN 323202)
*lilach@consumersadvocates.com*
ELISA PINEDA (SBN 328285)
*elisa@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorneys for Plaintiff and the Proposed Class***

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER TAG, on behalf of herself, all others similarly situated, and the general public,<br><br>        Plaintiff,<br><br>        v.<br><br>i360, LLC, a Delaware Limited Liability Company; GC STRATEGIES, LLC, a California Limited Liability Company; and JOSEPH LEVENTHAL, an individual;<br><br>        Defendants. | Case No.: **'21 CV0975 L      MDD**<br><br>CLASS ACTION<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>1. **Negligence**<br>2. **Public Disclosure of Private Facts**<br>3. **Invasion of Privacy, Cal. Const. Art. 1, § 1**<br>4. **California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200**<br><br>**DEMAND FOR JURY TRIAL** |

- 1 -

Class Action Complaint

Plaintiff Jennifer Tag ("Plaintiff"), on behalf of herself, all others similarly situated, and the general public, by and through her undersigned counsel, hereby bring this Class Action against Defendant i360, LLC ("i360"), Defendant GC Strategies, LLC ("GC Strategies"), and Defendant Joseph Leventhal ("Joe Leventhal") (collectively, "Defendants") to obtain actual and punitive damages, injunctive relief, restitution, and a declaration that Defendants' actions were unlawful as further set forth below.  Plaintiff alleges the following based upon personal knowledge as to herself and her own acts, and on information and belief as to all other matters, investigation conducted by and through her counsel.

## NATURE OF THE ACTION

1.    "It is the intent of the Legislature that a voter be fully informed of the permissible uses of personal information supplied by him or her for the purpose of completing a voter registration affidavit."  Cal. Elec. Code § 2157.1.

2.    The personal information that Californian voters supply on their voter registration affidavit, including their home address, telephone number, and email address, is confidential and shall not be disclosed except for limited exceptions so as to protect against unauthorized disclosures of confidential information.

3.    The disclosure of a Californian voter's personal information shall only occur upon submission of an application to the Secretary of State and only be used for the specific purposes permitted by law and approved by the Secretary of State.

4.    Californian law reflects the established principal that individuals have a substantial privacy interest in the personal information included on each voter's registration affidavit.

5.    In spite of this, Defendant i360, LLC and Defendant GC Strategies, LLC have a pattern and practice of profiting from the sale and distribution of Californian voters' personal information in violation of Californian voters' privacy rights.

Class Action Complaint

6.     Defendant Joe Leventhal knowingly aided this pattern and practice by obtaining Californian voters' personal information from Defendant i360 in violation of Californian voters' privacy rights.

7.     Plaintiff Jennifer Tag uncovered Defendants' wrongful conduct after Plaintiff discovered that a campaign worker for the 2020 City Council candidate for the City of San Diego, Defendant Joe Leventhal, obtained Plaintiff's personal information from Defendant i360 in violation of applicable state laws.

8.     Plaintiff further uncovered an agreement between Defendants GC Strategies and i360 whereby GC Strategies profits from i360's wrongful conduct by applying and obtaining California voter registration information on i360's behalf.

9.     Upon obtaining the voter registration information from GC Strategies, Defendant i360 distributes and sells Californian voters' personal information to countless other political candidates, campaigns, and organizations, which make up i360's clientele, including Defendant Joe Leventhal.

10.     Defendants have a duty to comply with state laws relating to the application for and use of Californian voters' personal information.  Compliance with these laws is necessary to ensure the safety and privacy of each Californian voter.

11.     Defendants i360 and GC Strategies failed to uphold their duty when they sold Californian voters' information to i360's clients without obtaining the prior express approval from the California Secretary of State.

12.     Defendant Joe Leventhal failed to uphold his duty to comply with state laws relating to the application for and use of Californian voters' personal information when he unlawfully purchased said information from i360 and disseminated this information to his committee workers.

13.     Upon information and belief, Plaintiff alleges Defendant i360 wrongfully distributes and sells Californians' personal information to countless others which make up i360's clientele.

Class Action Complaint

14.     Accordingly, Plaintiff brings this class action on behalf of herself and on behalf of all others similarly situated and the general public and asserts the following causes of action: negligence; public disclosure of private facts; invasion of privacy under Cal. Const. Art. 1, § 1; and violations of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200 *et seq*.

## JURISDICTION AND VENUE

15.     This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d) because: at least one Defendant, i360, is a citizen of a different state than the Plaintiff, the proposed Class consists of more than 100 persons, and the amount in controversy in the aggregate for the putative Class exceeds the sum or value of $5 million exclusive of interests and costs.  None of the exceptions under CAFA apply to this action.

16.     This Court has both general and specific personal jurisdiction over Defendants because Defendants have affirmatively established and maintained sufficient contacts with the State of California and conduct significant business in California and otherwise intentionally avail themselves to the markets in California, including the collection, distribution, and sale of voter data in this District and in California. This Court has specific personal jurisdiction arising from Defendants' decision to obtain, distribute, and sell Californian voter data.  Furthermore, Defendant Joe Leventhal is a resident of California and was a political candidate in the California November 2020 elections.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants conduct significant business in this District, engage in substantial transactions in this District, and because many of the transactions and material acts complained of herein occurred in this District, including, specifically, the distribution and sale of Plaintiff's and Class Members' personal information to political campaigns.

Class Action Complaint

**PARTIES**

18.    At all times alleged herein, Plaintiff Jennifer Tag, individual, was a citizen and resident of San Diego, California and was registered to vote in the State of California.

19.    Defendant i360, LLC is a Delaware limited liability company that collects, markets, advertises, and sells voter data in California and throughout the United States.   i360 maintains its principal place of business at 2300 Clarendon Boulevard, Suite 800, Arlington, Virginia, 2201-0000.

20.    Defendant GC Strategies, LLC is a California limited liability company that specializes in political, marketing, and public relations consulting services.   GC Strategies has a contractual agreement with Defendant i360 to apply for Californian voter registration information on i360's behalf.   GC Strategies maintains its principal place of business at 9087 Arrow Route, Suite 210, Rancho Cucamonga, California 91730.

21.    Defendant Joe Leventhal is a California resident who was a political candidate for San Diego City Council in 2020.   Joe Leventhal was a former member of the San Diego County Ethics Commission from 2017-2018.   Joe Leventhal willfully and knowingly authorized the purchase of California voter registration information from i360 in violation of state law in his official capacity as the agent of his candidate-controlled committee, Leventhal for Council 2020.   *See* Cal. Govt. Code § 82016(a) (defining "controlled committee" as a committee directly or indirectly controlled by a candidate in connection with the making of expenditures); *see also* **Exhibit A** [listing Leventhal for Council 2020 as a "candidate controlled committee"] at p. 2.

**AGENCY; AIDING AND ABETTING; AND CONSPIRACY**

22.    At all times relevant thereto, Defendants, and each of them, were acting as the agents, employees or representatives of each other, and were acting within the course and scope of their agency and employment with the full knowledge, consent,

Class Action Complaint

1   permission, authorization and ratification, either express or implied, of each of the
2   other Defendants in performing the acts alleged in this Complaint.

3       23.   As members of the conspiracies alleged more fully below, each of the
4   Defendants participated or acted with or in furtherance of such conspiracy and have
5   performed acts and made statements in furtherance of the conspiracy and other
6   violations of California law.   Each Defendant acted both individually and in
7   alignment with the other Defendants with full knowledge of their respective wrongful
8   conduct.   Defendants thus conspired together, each building upon the other's
9   wrongdoing in order to accomplish the bad acts of Defendants identified in this
10  Complaint.

11      24.   Defendants are individually sued as principals, participants, aiders and
12  abettors, and co-conspirators in the wrongful conduct identified in this Complaint.
13  Each Defendant has engaged in all or part of the improper acts, plans, scheme,
14  conspiracies or transactions complained of herein.

15                        **FACTUAL ALLEGATIONS**

16  **a. Defendant i360**

17      25.   Defendant i360 is in the business of "harvest[ing] troves of data to build
18  profiles of every voter and potential voter in the country."   Source: *Koch Data*
19  *Mining Company Helped Inundate Voters With Anti-Immigrant Messages*, Lee Fang,
20  THE INTERCEPT, Sept. 9, 2019 https://theintercept.com/2019/09/09/koch-anti-
21  immigrant-data-i360/ (last accessed May 21, 2021).

22      26.   i360 was founded by Charles Koch "in the aftermath of the 2012
23  election, in which Republican candidates favored by Koch fared poorly . . . i360 was
24  envisioned as a way to revolutionize right-wing pressure campaign and election
25  efforts by incorporating the latest in data science." *Id.*

26      27.   The company "serves as a data warehouse and data resource vendor to
27  its customers, candidates, and political committees."   *See* **Exhibit B**, at p. 2
28  [Defendant i360's Response to FEC Complaint].

- 6 -

Class Action Complaint

28.    "i360, at its core, is a commercial data vendor selling data from its data library of over 190 million voters and 250 million American consumers, including hundreds of aggregate data points on such individuals, as well as proprietary predictive modeling data." *Id.*

29.    The foundation of i360's database library is the personal information obtained from voter registration files maintained by Secretaries of States.  *Id.* at p. 6 ("One thing that has not changed with the recent data analytics boom, though, is that '[t]he foundation of voter databases is the publicly available official voter files maintained by Secretaries of State.'") (citation omitted).

30.    i360 self-describes the voter registration files it obtains from Secretaries of State as being "publicly available." *Id.*

31.    <u>This is false</u>.  In California, voter registration files are "confidential and shall not be disclosed to any person, except pursuant to Section 2194 of the Elections Code." Elec. Code § 6254.4.

32.    Yet i360 describes its database library as being "akin to an enhanced phone book" that can be accessed by each of its clients.  *See* **Exhibit B**, at p. 9 ("In other words, it is the end-user customer who ultimately decides what to select from the i360 data library."); *id*. at p. 13.

33.    "i360's service can also be viewed in the same light as Lexis or Westlaw – each contain massive amounts of information, but it is the end-user who must decide what to pull, what to emphasize and how to use it in an end-product."  *Id.* at p. 6, n3.

34.    "For example, [an i360] customer could pull or select a list of all female registered voters in Baltimore.  A customer could further refine their pull to all female registered voters in Baltimore who are registered Democrat yet appear to be pro-life under the age of 35." *Id.* at p. 8.

35.     i360's clients may also upload their own data, which i360 will then use "to further refine and tag i360's already-existing data library and the predictive models it contains." *Id.* at p. 9.

36.     In sum, the "i360[] database constitutes a library of factual, qualitative information, available to be accessed and used by its clients on their own prerogative." *Id.* at p. 23.

37.     "i360 employs a number of data scientists to maintain the database and proprietary modeling algorithms based on a multitude of individual data points.  As in any statistically-based endeavor, there is . . . a powerful corollary incentive for obtaining as much data as possible[.]" *Id.* at p. 7.

38.     The incentive to collect as much data as possible led i360 to form a data sharing agreement with another data company called Data Trust.

39.     As it does with other commercial data resources, i360 entered into a business deal with Data Trust, another commercial vendor which possessed commoditized data that could be useful to the existing i360 data library and predictive models, and thus improve i360's product. *Id.* at p. 10.

40.     i360 and Data Trust announced the agreement in late August of 2014. The goal of the arrangement was to give each entity's clients access to more and better data by sharing and updating data across each entity's respective voter database. Source: FEC Complaint Against i360, LLC, MUR # 6888, at p. 5, Oct. 23, 2014,   https://www.fec.gov/files/legal/murs/6888/16044391307.pdf   (last accessed May 21, 2021).

41.     Pursuant to the terms of the agreement, "[c]lients of either The Data Trust or i360 can improve the data shared with all clients. For example, if a client of either company conducting voter outreach identifies a voter attribute or preference, clients of the other organization will benefit from that information. As a result, conservative groups and campaigns will have more information about voters at their disposal for their own activities than ever before." *Id.* at p. 5-6.

Class Action Complaint

42.    i360 and Data Trust entered into another agreement to share voter data in the 2016 election cycle.  Source: *Koch network strikes new deal to share voter data with RNC-aligned firm*, Matea Gold, THE WASHINGTON POST, July 29, 2015, https://www.washingtonpost.com/news/post-politics/wp/2015/07/29/koch-network-strikes-new-deal-to-share-voter-data-with-rnc-aligned-firm/ (last accessed May , 2021).

43.    "The partnership – similar to the one that the two entities had in 2014 – mean[t] that the eventual GOP presidential nominee w[ould] have a voter file enriched with data gathered by other Republican contenders as well as Koch-backed groups such as Americans for Prosperity." *Id.*

44.    The agreement between i360 and Data Trust prompted criticism from then chief of staff of the Republican National Committee, Katie Walsh, who stated "that she believed 'its very dangerous and wrong to allow a group of very strong, well-financed individuals *who have no accountability to anyone* to have control over who gets access to the data when, why and how.'" *Id.* (emphasis added).

**b. Defendant GC Strategies' Agreement to Obtain California Voter Information on Behalf of Defendant i360**

45.    Public records show that on or around July 18, 2018, Defendant GC Strategies LLC began obtaining personal information from Californian voter registration files on Defendant i360's behalf. *See* **Exhibit C** [Application for California Voter Registration file made by GC Strategies on i360's behalf], at p. 2.

46.    A letter from i360 to the Secretary of State, dated July 23, 2018, stated the voter registration files requested by GC Strategies on i360's behalf shall be used "in accordance with Title 2, Division 7, Chapter 1, Article I of the California Code of Regulations, and Elections Code Sections 2188 and 2194, Government Code Section 6254.4, and any other applicable California laws." *See* **Exhibit D** [i360 letter to Secretary of State], at p. 2.

47.     A letter from GC Strategies to the Secretary of State, dated August 22, 2018, stated GC Strategies would contractually require i360 to use administrative, physical, and technical safeguards to protect the voter registration records and that only authorized employees of GCS and i360 would have access to the data.  *See* **Exhibit E** [GC Strategies letter to Secretary of State], at p. 2-3.

48.     On August 27, 2018, the Secretary of State wrote a letter to GC Strategies enclosing the requested Californian voter registration files. The letter further stated, "You are approved to use this data only for the purpose stated in your application – **not for any type of commercial purpose**. You must obtain authorization from the Secretary of State before this data can be used for any other purpose or before it can be transferred to another party." *See* **Exhibit F** [Secretary of State letter to GC Strategies], at p. 2 (emphasis in original).

49.     GC Strategies thereafter continued to submit applications for California voter registration information on i360's behalf.

50.     On August 26, 2019, GC Strategies submitted another letter to the Secretary of the State regarding a California Voter Registration File request made on i360's behalf.  *See* **Exhibit G** [GC Strategies letter to Secretary of State].

51.     GC Strategies stated:

> GCS is requesting the California voter registration information for its own use and to transfer . . . to the Transferees. i360, the Transferee, utilizes strict security and confidentiality measures which are consistent with high standards in the data management industry, to secure and protect the voter registration list from unauthorized us [sic], access, or disclosure.

*See id.* at p. 2.

52.     Notably, an application from GC Strategies made on July 30, 2019 and on i360's behalf was flagged by a government employee named "Renee" who handwrote the following:

GC Strategies and i360 made a PVRDR Request on 08/27/19.[1] The letters they used then are very similar to the ones on their new application. On both applications, they do not state who they will eventually share the data with[.]

- Renee 12/06/19

*See* **Exhibit H** [GC Strategies July 30, 2019 application], at p. 2.

53.    On January 16, 2019, i360 wrote the Secretary of State with the subject line "Re: Following up on Conversation with Cameron Wessel of GC Strategies Regarding California Voter Registration File Request." *See* **Exhibit I** [i360 Letter to Secretary of State], at p. 2.

54.    The letter stated that "Mr. Wessel advised i360 that we submit this letter to your office to describe i360's activities as a transferee of the California voter registration file from GC Strategies and include i360's clients that would access the California voter registration file through i360." *See id.*

55.    The last page of the letter listed the following clients:

- Republican Party of San Diego
- Jay Obernolte for Congress
- Laurie Davies for State Assembly
- Jeremy Smith for State Assembly
- Check Washington for Supervisor 2020
- Carl Demaio for Congress
- River Right LLC Diane Dixon for Assembly 2020

*See id.* at p. 3.

**c.  Californian Voters' Privacy Rights**

---

[1] It appears the letter "Renee" refers to is the August 26, 2019 application, *see* Ex. J, as reflected by the applications found in public records.  *See* Cal. Elec. Code § 2188 ("Completed applications for voter registration information shall be retained by the elections official for five years from the date of application.")

56.     On June 15, 2004, California Secretary of State Kevin Shelley released recommendations made by a Task Force created to focus on Voter Privacy.  Source: *Secretary of State Kevin Shelley Announces Recommendations from Task Force on Voter Privacy*, June 15, 2004, https://admin.cdn.sos.ca.gov/press-releases/prior/2004/04_039.pdf (last accessed May 21, 2021).

57.     Secretary of State Shelley stated "Californians are increasingly concerned about protecting their privacy . . . The Task Force made recommendations that enhance the protection of private information contained in voter files and ensure that voters receive vital information on how to protect themselves from identity theft and other crimes." *Id.*

58.     One of the key recommendations issued by the Task Force to increase voter privacy protections was to require "additional restrictions to prevent misuse by those authorized to use voter registration information." *Id.*

59.     "The Task Force believe[d] that current laws should be strengthened to protect against impermissible uses of voter information, especially by secondary users." Source: *Task Force on Voter Privacy: FINAL REPORT*, Presented to Secretary of State Kevin Shelley and Members of the Legislature, June 14, 2004, at p. 23, https://elections.cdn.sos.ca.gov/voter_privacy_final_report/intro_tfvp_final_report.pdf, (last accessed  May 21, 2021).

60.     "The Task Force recommend[ed] that the Secretary of State sponsor legislation to:

- Require that applications for voter file data identify the 'end-user' of the data; for example a scholarly use of the data might be identified with a specific university, or a political use might be identified with a specific ballot measure committee.

- Specify that reuse or resale of the data, even for a similar purpose, by another party is prohibited without further written authorization from

- 12 -

Class Action Complaint

the state or county elections officials from whom the voter registration file data was obtained.

- Require a retention and disposal procedure to safeguard the information while it is in the possession of the end user and ensure proper disposal of data when the end user discards it."

*Id.* at pp. 23-24.

61. Thereafter, the Secretary of State sponsored Assembly Bill No. 2079 "to codify the consensus recommendations of the Voter Privacy Task Force." Source: *Secretary of State Kevin Shelley Announces Recommendations from Task Force on Voter Privacy*, June 15, 2004, https://admin.cdn.sos.ca.gov/press-releases/prior/2004/04_039.pdf (last accessed May 21, 2021).

62. Assembly Bill No. 2079 was passed on February 17, 2004. A.B. 2079, CA, Feb. 17, 2004, https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=200320040AB2079 (last accessed May 21, 2021).

63. Assembly Bill ("AB") No. 2079 states: "It is the intent of the Legislature that a voter be fully informed of the permissible uses of personal information supplied by him or her for the purpose of completing a voter registration affidavit." *See* Cal. Elec. Code § 2157.1.

64. Elections Code § 2194 was amended by AB 2079, to read:

The voter registration card information identified in subdivision (a) of Section 6254.4. of the Government Code:

(1) Shall be confidential and shall not appear on any computer terminal, list, affidavit, duplicate affidavit, or other medium routinely available to the public at the county elections official's office.

(2) Shall not be used for any personal, private, or commercial purpose . . .

(3) Shall be provided with respect to any voter, subject to the provisions of Section 2188, to any candidate for federal, state, or local office, to any

- 13 -

Class Action Complaint

committee for or against any initiative or referendum measure for which legal publication is made, and to any person for election, scholarly, journalistic, or political purposes, or for governmental purposes, as determined by the Secretary of State,

65.    Government Code § 6254.4 states that "the home address, telephone number, email address, precinct number, or other number specified by the Secretary of State for voter registration purposes, and prior registration information shown on the affidavit of registration, is confidential and shall not be disclosed to any person, except pursuant to Section 2194 of the Elections Code."

66.    Elections Code § 2188, which governs the application for voter registration information, was amended to read: "Any application for voter registration information available pursuant to law and maintained by the Secretary of State or by the elections official of any county shall be made pursuant to [Election Code § 2188]." *See* Elec. Code § 2188(a).

67.    If an application for voter registration information is made on behalf of another person, the applicant shall, in addition to providing their information, provide the information of the person on whose behalf the application is being made. *See* Elec. Code § 2188(c).

68.    All applications for voter registration information must be signed under penalty of perjury. *See* Elec. Code § 2188(c).

69.    California Code of Regulations ("CCR") regulates for what purpose voter registration information may be used.

70.    California voter registration information obtained by any person shall be used solely for election and governmental purposes. *See* CCR § 19002.

71.    Pursuant to CCR § 19003, "election and governmental purposes" include but is not limited to the following:

(a) Using registration information for purposes of communicating with voters in connection with any election.

Class Action Complaint

(b) Sending communications, including but not limited to, mailings which campaign for or against any candidate or ballot measure in any election.

(c) Sending communications, including but not limited to, mailings by or on behalf of any political party; provided however, that the content of such communications shall be devoted to news and opinions of candidates, elections, political party developments and related matters.

(d) Sending communications, including but not limited to, mailings, incidental to the circulation or support of, or opposition to any recall, initiative, or referendum petition.

(e) Sending of newsletters or bulletins by any elected public official, political party or candidate for public office.

(f) Conducting any survey of voters in connection with any election campaign.

(g) Conducting any survey of opinions of voters by any government agency, political party, elected official or political candidate for election or governmental purposes.

(h) Conducting an audit of voter registration lists for the purpose of detecting voter registration fraud.

(i) Soliciting contributions or services as part of any election campaign on behalf of any candidate for public office or any political party or in support of or opposition to any ballot measure.

(j) Any official use by any local, state, or federal governmental agency.

72.    Pursuant to CCR § 19004, the following uses of voter registration information are <u>prohibited</u>:

(a) Any communication or other use solely or partially for any commercial purpose.

(b) Solicitation of contributions or services for any purpose other than on behalf of a candidate or political party or in support of or opposition to a ballot measure.

(c) Conducting any survey of opinions of voters other than those permitted by Sections 19003(f) and (g).

73.    Any person who obtains voter registration information is further prohibited from "mak[ing] any information available under any terms, in any format, or for any purpose, to any person <u>without receiving prior written authorization</u> from" the California Secretary of State. Such authorization will only be given "after the person to receive such information has executed the written agreement set forth in Section 19008." CCR § 19005.

74.    It is a misdemeanor for a person in possession of California voter registration information to "knowingly [] use or permit the use of all or any part of that information for any purpose other than as permitted by law."  Cal. Elec. Code § 18109.

75.    It is also a misdemeanor "for a person knowingly to acquire possession or use of voter registration information from the Secretary of State or a county elections official without first complying with Section 2188."  Cal. Elec. Code § 18109.

76.    Defendants i360 and GC Strategies, who applied and obtained California voter registration information, were subject to the foregoing provisions.  Defendant Joe Leventhal, who purchased and obtained California voter registration information from Defendant i360, was also subject to the foregoing provisions.

**d.  The Defendants' Practice of Distributing and Selling Voter Data Without Prior Express Approval Violates Voters' Privacy Rights**

77.    Defendants violate Californian voters' privacy rights through their unlawful distribution and selling of Californian voter data.

78.    For example, Defendant Joe Leventhal created Leventhal for Council 2020 to use as his committee in the election.    State election records show that Defendant Joe Leventhal through his candidate-controlled committee, Leventhal for Council 2020, purchased California voter registration information from Defendant i360 between February 16, 2020 to July 30, 2020.    *See* **Exhibit A** [Leventhal for Council 2020 Campaign Statement].

79. Defendant Joe Leventhal did not legally obtain Californian voters' information from either the California Secretary of State, or the San Diego County Registrars' Office.    Nor did Defendant Joe Leventhal have an application for Californian voters' information submitted on his behalf.    Defendant Joe Leventhal thereby acted in violation of Elections Code § 2188.

80. Defendant Joe Leventhal further disseminated this illegally obtained Californian voter information to his committee workers in violation of CCR § 19005. Defendant Joe Leventhal never complied with CCR § 19008 to obtain permission from the Secretary of State prior to dissemination to his committee.    The Secretary of State has no record of Joe Leventhal of either applying or having someone apply on his or his committee's behalf in violation of Elections Code § 2188.

81. Obtaining voter information from the Secretary of State of a county elections official, i.e., the San Diego Registrar of Voters, without first complying with Election Code § 2188 is a criminal misdemeanor offense per Elections Code § 18109(b).

82. Upon information and belief, Defendant Joe Leventhal knowingly committed this misdemeanor offense.

83. Prior to running for council, Defendant Joe Leventhal had been appointed to a four-year term with the San Diego Ethics Commission in 2017.    Source: *Joseph Leventhal Appointed to San Diego Ethics Commission*, Dinsmore, Oct. 11, 2017, https://www.dinsmore.com/news/joseph-leventhal-appointed-to-san-diego-ethics-commission/ (last accessed May 21, 2021).

84. The San Diego Ethics Commission is responsible, in part, for "advising and educating city officials, candidates, political committees, and lobbyists about governmental ethics laws." *Id.*; *see also About the Commission*, CITY OF SAN DIEGO https://www.sandiego.gov/ethics/about, (last accessed May 21, 2021).

85. The "governmental ethics laws" are found in the San Diego Municipal Code ("SDMC"). Relevant to the allegations set forth in this complaint is SDMC § 27.3503, which defines "confidential information" as information whose use or disclosure is prohibited by a statute, regulations, or rule. The San Diego Ethics Commission is responsible for advising city officials, candidates, political committees, and lobbyists of the governmental ethics laws related to the use or disclosure of "confidential information." *See* SDMC § 27.3564 (prohibits current or former city officials from use or disclosing confidential information); *see also* SDMC § 27.4023 (prohibits lobbyists from directly or indirectly accepting, using, or disclosing confidential information).

86. Upon information and belief, after having served on the Ethics Commission to advise candidates and political committees regarding governmental ethics laws, including those related to the use or disclosure of "confidential information," Defendant Joe Leventhal was intimately aware of the process for applying and obtaining California voter registration data.

87. Despite his experience and knowledge, Defendant Joe Leventhal knowingly purchased and obtained California voter registration data from Defendant i360 without fhaving Defendant i360 submit an application on his behalf, therefore acting in violation of Elections Code §§ 2188 and 18109 and CCR § 19005.

88. Upon information and belief, Defendant i360 and Defendant GC Strategies distribute and sell California voter registration data to countless others which make up i360's clientele.

89. For example, committee campaign records from the Federal Elections Commission indicate the following:

Class Action Complaint

- Eric Early, through his principal campaign committee, Eric Early for Congress 2020, ID No. C00711432, purchased an online subscription for data services from i360 on August 21, 2020, November 19, 2020 and December 11, 2020;

- Joshua Scott, through his principal campaign committee, Joshua Scott for Congress, ID No. C00682179, purchased data to conduct surveys from i360 on March 10, 2020; April 3, 2020; July 3, 2020; September 4, 2020; September 16, 2020; and October 5, 2020;

- Greg Raths, through his principal campaign committee Greg Raths for Congress 2020, ID No. C00700599, purchased voter list data from i360 on August 12, 2020 and September 12, 2020 and data for phone banking on October 6, 2020, October 12, 2020, November 17, 2020

*See* **Exhibit J** [Independent Expenditures to i360 taken from Federal Election Commission website], at pp. 8-12, 14-16.

90.    Each of the campaigns listed above were for federal candidates running a campaign in California, and thus the voter data obtained from i360 would have been obtained by i360 via an application to the Secretary of State.

91.    Yet public records show that neither i360 nor GC Strategies disclosed in their applications to the California Secretary of State that the personal information of Californian voters would be sold and distributed to the federal candidates and committees listed above.  Such conduct violates the express prohibition on transferring voter registration information to any person without receiving prior written authorization from the Secretary of State.  *See* CCR § 19005; *see also* Cal. Elec. Code §§ 2188 and 18109.

92.    Upon information and belief, Defendant i360 provides California voter registration information to each of its clients upon granting access to i360's database without prior express approval from the California Secretary of State, therefore acting in violation of Elections Code §§ 2188 and 18109 and CCR 19005.

Class Action Complaint

93.    Upon information and belief, Defendant GC Strategies is aware of i360's unauthorized disclosures of voter registration information and actively conspired with i360 and aided i360's wrongful conduct through its contractual agreement with i360 to apply and obtain Californian voter data on i360's behalf.

**e. Plaintiff Jennifer Tag's Experience**

94.    Plaintiff Jennifer Tag became aware of Defendants' wrongful conduct after a campaign worker for Defendant Joe Leventhal's campaign, Leventhal for Council 2020, arrived at her home to campaign for Joe Leventhal on February 24, 2020.

95.    Prior to this, Plaintiff, who was a Deputy District Attorney for the County of San Diego, had obtained what is referred to as "confidential voter status" on or around November 18, 2019.

96.    "Confidential voter status" is a type of heightened confidential status that may be obtained pursuant to Elections Code §§ 2166 and 2166.7.[2]

97.    Elections Code § 2166.7 provides that any public safety officer may obtain confidential voter status upon applying under penalty of perjury "that a life-threatening circumstance exists to the officer or a member of the officer's family." Such applications shall be a public record.

98.    Public safety officers include any attorney, whether active or retired, who were employed by the County of San Diego District Attorney's Office. *See* Cal. Govt. Code § 6254.24.

99.    For individuals who are not public safety officers and who are similarly seeking confidential voter status due to life-threatening circumstances, an application for such status may be made pursuant to Elections Code § 2166.

---

[2] All Californian voters' personal information supplied on their voter registration is confidential regardless of whether the voter obtains the heightened confidential voter status pursuant to Elections Code §§ 2166 and 2166.7. *See* Govt. Code § 6254.4.

100.   Plaintiff Jennifer Tag obtained confidential voter status because she was "a deputy district attorney for the San Diego County District Attorney's Office . . . assigned to the Sex Crimes and Human Trafficking Division."   As a result of her position with the District Attorney's Office, Plaintiff Jennifer Tag was "the target of threatening letters from stalkers [that she] prosecuted."   Thus, she declared under penalty of perjury that good cause exists for the heightened confidential voter status. *See* **Exhibit K** [Plaintiff's Elections Code § 2166 form].

101.   Upon obtaining heightened confidential voter status, elections officials, in producing any voter registration information pursuant to an application under Elections Code § 2188, must exclude such voters from any produced voter registration files.

102.   Accordingly, Joe Leventhal's campaign worker should not have been able to obtain Plaintiff's personal information from i360 because such information would have been excluded by elections officials following Plaintiff obtaining confidential voter status on or around November 18, 2019.

103.   Plaintiff became greatly concerned that her personal information was being distributed in violation of state law and thereafter invested significant time and expense, including out-of-pocket expenses of approximately $102.52 and countless hours, to investigate the matter.

104.   Plaintiff discovered that Defendant Joe Leventhal had obtained her voter registration information from Defendant i360, LLC.

105.   Public records show that neither Defendant i360 nor Defendant GC Strategies disclosed in their applications to the California Secretary of State or the San Diego County Registrar of Voters that the personal information of Californian voters would be distributed to Defendant Joe Leventhal or his candidate-controlled campaign, Leventhal for Council 2020.   Yet such information *was* sold to and used by Joe Leventhal's campaign by i360.

Class Action Complaint

106.   Public records further show that Defendant Joe Leventhal and his candidate-controlled committee, Leventhal for Council 2020, did not obtain prior express approval in accordance with Elections Code § 2188 to obtain  Californian voter registration information or to disseminate such information to his committee workers.

107.   Plaintiff continued her investigation and on or around July 28, 2020, Plaintiff conducted a "LiveChat" with an i360 customer service representative named Chris.  Attached as **Exhibit L** is a copy of the Chat Transcript.

108.   The following portion of the Chat Transcript confirms that i360 ignores California state law's requirements for use of voter registration information and distributes such information without limit to its clients.  Plaintiff is listed as "Visitor":

Visitor                                                                          09:05:07 pm

if purchased does it provide a list of voters within a certain city, and I can narrow down by political party?

Chris                                                                            09:06:59 pm

Yes, our platform provides all of the voter data so you can define universes based on whatever criteria you'd like. You can then create a survey for the walk app that provides efficient routing for the voters you've chosen.

**Visitor                                                                       09:07:41 pm**

**so do we need to cross reference in any way with the county registrar of voters?**

**Chris                                                                         09:08:08 pm**

**Nope! We already have all of the voter data.**

1

2    **Visitor**                                    **09:08:22 pm**

3    wow, so it makes it easier for us

4    how often is it updated? like is someone moves residences etc

5    *if

6

7    **Chris**                                      **09:09:00 pm**

8    We do quarterly voter file updates and monthly NCOA (change of

9    address) updates.

10   What campaign or organization would this be for?

11

12   **Visitor**                                    **09:09:42 pm**

13   and it it automatically loaded onto the platform? so we don't have to

14   worry and it would be updated in real time?

15

16   **Chris**                                      **09:10:02 pm**

17   That's right, your database will automatically update.

18

19   **Visitor**                                    **09:10:35 pm**

20   have there been issue if someone has a confidential address? would

21   those come through to? my neighbor is a police officer for instance

22   how much does this service cost?

23

24   **Chris**                                      **09:11:10 pm**

25   We follow all applicable laws and regulations – if their address is not

26   on the voter file, we don't ingest it. If it's a confidential address,

27   generally those don't make it onto the voter file.

28   . . .

- 23 -

Class Action Complaint

1

2      **Visitor**                                    **09:13:23 pm**

3      **does the quarterly update always occur on a set date? or is it**

4      **quarterly from your individual purchase date?**

5

6      **Chris**                                      **09:14:12 pm**

7      **It's not a set date as the state varies on when they will provide it, but**

8      **its approximately every three months**

9      *See* **Exhibit L** at pp. 2-3 (emphasis added).

10         109.   The Chat Transcript shows that i360 treats each application for

11   California voter registration information as a "quarterly update" to the voter data

12   provided to each of its clients.

13         110.   i360 and GC Strategies are obligated under state law to list in its

14   application for California voter registration information each individual and/or entity

15   that will access the information provided to i360.  *See* CCR § 19005.

16         111.   Yet, i360 failed to obtain express written approval to provide the

17   personal information of Californians voters to its clientele, including Defendant Joe

18   Leventhal.

19         112.   Upon information and belief, i360 distributes and sells voter registration

20   information to countless more political candidates, campaigns, and organizations,

21   which make up i360's clientele.

22         113.   Further, i360 falsely asserts that it wipes voters with confidential voter

23   status from the database each time it conducts its "quarterly update."  Had this been

24   true, Plaintiff's voter registration information would have been wiped during this so-

25   called update.

26         114.   Regardless, i360 violates California state law by countlessly distributing

27   and selling Californian voters' information without obtaining express written

28   approval from the California Secretary of State in violation of CCR § 19005.

115.    It is a misdemeanor to knowingly use or permit use of any part of the voter registration information obtained pursuant to Government Code § 6254.4 for any purpose other than permitted by law; or to knowingly acquire possession or use of voter registration information from the Secretary of State without first complying with Elections Code § 2188.  *See* Elec. Code § 18109.

116.    i360's response to complaints made against it to the Federal Election Commission on October 23, 2014 further confirms i360's disregard for California laws regarding voter registration information.

117.    In its response to allegations made against it, i360 describes and admits that it engages in the type of data sharing prohibited by California law.  *See e.g.,* **Exhibit B**:

- "i360's service can also be viewed in the same light as Lexis or Westlaw – each contain massive amounts of information, but it is the end-user who must decide what to pull, what to emphasize and how to use it in an end-product." *Id.* at p. 6, n.3.

- "For example, [an i360] customer could pull or select a list of all female registered voters in Baltimore.  A customer could further refine their pull to all female registered voters in Baltimore who are registered Democrat yet appear to be pro-life under the age of 35." *Id.* at p. 8, n.6.

- Data uploaded by a client can be accessed and analyzed "to further refine and tag i360's *already-existing data library* and the predictive models it contains. . . Though much of this imported data is redundant with existing data points, it is still valuable for i360's future purposes, because even redundant enhances the i360 database and models with issue and demographic information *relevant to individuals i360 already has in its database*." *Id.* at pp. 9-10 (emphasis added).

- "i360 is in the business of selling enhanced data with respect to the named Respondents—akin to an enhanced phone book based upon publicly available voter rolls and consumer data[.]" *Id.* at p. 16.

- "[T]he bedrock of the i360 data library comes from publicly available sources, such as voter lists and consumer data." *Id.* at p. 20.

- "i360's database constitutes a library of factual, qualitative information, available to be accessed and used by its clients on their own prerogative." *Id.* at p. 23.

118.   Straight from the horse's mouth, i360 admits that it collects voter registration information and uses it to refine its existing data-library, which can then be accessed by any of its clients without regard to California's prerequisite for prior express approval.

119.   i360's clients, including Defendant Joe Leventhal, then continue this illegal use of California voter information by paying for i360's service and providing the illegally obtained voter information to numerous committee workers and volunteers without any safeguarding of voter registration information.

120.   Defendants' wrongful conduct violates Californian voters' privacy rights and exposes them to serious risks of identity theft.

121.   As explained by a member of the California Task Force on Voter Privacy, "the data elements of a voter record, in the wrong person's hands, essentially comprise an 'identity starter kit.' The only other data the thief needs to complete the starter kit is the Social Security number, which is relatively easy to obtain through other means."   Source: *Task Force on Voter Privacy: FINAL REPORT*, Presented to Secretary of State Kevin Shelley and Members of the Legislature, June 14, 2004, at p. 9,

- 26 -

Class Action Complaint

https://elections.cdn.sos.ca.gov/voter_privacy_final_report/intro_tfvp_final_report.pdf, (last accessed May 21, 2021).

122.   Identity theft is a serious concern not only in California but across the nation.  In 2017 alone, there was 12.7 million U.S. adult victims, which represents 4% of U.S. adults and includes over 1.5 Californians.  Source: *Identity Thief*, State of California Department of Justice, https://oag.ca.gov/idtheft (last accessed May 21, 2021).

123.   The regulations for obtaining and distributing Californian's personal information from voter registration files are intended to protect against the risk of identity theft and misuse of personal information.

124.   Furthermore, related to Plaintiff specifically and others similarly situated with life-threatening conditions who have obtained a heightened confidential voter status pursuant to Elections Code § 2166, there is a serious concern for safety when personal information is illegally obtained and disseminated.

125.   To permit Defendants i360 and GC Strategies to distribute Californian voters' personal information without limitation and in violation of state law creates a risk of harm to each Californian voter whose information is contained in i360's existing database and carries a serious risk of creating a chilling effect on voter participation for fear of misuse of personal information.

126.   To permit political candidates and committees, such as Defendant Joe Leventhal, to use this illegally obtained Californian voter information without limitation and in violation of state law further exacerbates this risk of harm to every Californian voter.

## CLASS ACTION ALLEGATIONS

127.   Plaintiff brings this action on behalf of herself and all others similarly situated (the "Class") pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and 23(c)(5).

128.   The Class is defined as follows:

All individuals whose California voter registration information was distributed and sold by GC Strategies, LLC or i360, LLC to other persons and/or entities without the prior express approval from the California Secretary of State or California elections officials on or after May 1, 2018 and until notice is disseminated to the Class (the "Class Period").

129.   Plaintiff further seeks to represent a Sub-Class as defined below:

All individuals who are members of the Class and who obtained confidential voter status pursuant to California Elections Code § 2166.

130.   The following people are excluded from the Class and Sub-Class: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, affiliated entities, and any entity in which Defendants or their parents have a controlling interest, and their current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of such excluded persons.

131.   <u>Numerosity</u>.  The members in the proposed Class and Sub-Class include all Californian voters whose voter registration information was obtained and distributed without prior express approval from the California Secretary of State. During the 2020 general election, there were approximately 22,389,846 registered voters in California. Accordingly, the Class and Sub-Class likely number millions of Californian voters.   Individual joinder of all members is impracticable, and the disposition of the claims of all Class members in a single action will provide substantial benefits to the parties and Court.

132.   <u>Commonality</u>.  Questions of law and fact common to Plaintiff and the Class include:

a.   Whether Defendants obtained prior written express approval from the California Secretary of State prior to distributing and selling voter registration information to third parties;

b.   Whether Defendants' conduct violated applicable state laws; and

c.   Whether Plaintiff and the Class are entitled to actual and punitive damages, restitution, injunctive relief, declaratory relief, or other relief;

d.   Whether Defendants' conduct was negligent;

e.   Whether Defendants' conduct constituted public disclosure of private facts.

133.   <u>Typicality.</u>  Plaintiff is a member of the Class and Sub-Class.  Plaintiff's claims are typical of the claims of each Class and Sub-Class member in that Plaintiff and Class Members sustained damages arising out of Defendants' pattern and practice of distributing Californian voter registration data in violation of California voters' privacy rights, and Plaintiff and Class members sustained similar injuries and damages as a result of Defendants' uniform unlawful conduct.

134.   <u>Adequacy.</u>   Plaintiff is an adequate class representative because Plaintiff's interest do not conflict with the interests of the Class she seeks to represent.  Plaintiff's claims are common to all members of the Class, and Plaintiff has a strong interest in vindicating the rights of absent Class members.  Plaintiff has retained counsel competent and experienced in complex class action litigation, and she intends to vigorously prosecute this action.

135.   <u>Ascertainability.</u>  Class and Sub-Class Members can easily be identified by the objective criteria set forth in the Class and Sub-Class definition.

136.   <u>Predominance.</u>   The common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class and Sub-Class.  Class issues fully predominate over any individual issue.

137.   <u>Superiority.</u>  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because: (a) the joinder of all

- 29 -

Class Action Complaint

individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources; (b) the individual claims of the Class and Sub-Class members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions; (c) when Defendants' liability has been adjudicated, all Class and Sub-Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases.

138.   This class action is also properly brought and should be maintained as a class action because Plaintiff seeks injunctive relief on behalf of the Class and Sub-Class on grounds generally applicable to both Classes.  Certification is appropriate because Defendants have acted or refused to act in a manner that applies generally to the injunctive Class (i.e., Defendants violated Plaintiff's and the Class Members' privacy rights by selling and distributing the personal information included in Plaintiff's and Class Members' voter registration information in violation of applicable state laws).  Thus, any final injunctive relief or declaratory relief would benefit the Class as a whole.

## CAUSES OF ACTION

### First Cause of Action

### Negligence

139.   Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

140.   Plaintiff brings this claim on behalf of herself and members of the proposed Class and Sub-Class.

141.  Defendants owed Plaintiff and Class Members a duty to exercise reasonable care in distributing and selling their confidential voter registration information in their care and custody, including following applicable state laws governing the use and distribution of such information.

142.   Defendants owed a duty of care to Plaintiff and Class Members because Plaintiff and Class Members are foreseeable and probable victims of Defendants' failure to properly secure confidential voter registration information.

143.   Defendants acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class Members' confidential voter registration information by distributing and selling such information to unauthorized third parties and by failing to properly supervise the manner in which the information was used and exchanged.

144.   The risk that unauthorized persons would gain access upon purchasing access to i360's existing database of confidential voter registration information and misuse of such information was foreseeable.

145.   Defendants knew, or should have known, the risk in allowing each of i360's clients to obtain, use, handle, and store the confidential voter registration information of Plaintiff's and Class Members and the importance of exercising reasonable care in handling it.

146.   Defendants breached their duty by failing to exercise reasonable care in handling and distributing the confidential voter registration information of Plaintiff and Class Members, which actually proximately caused Plaintiff's and Class Members' injuries. As a direct and traceable result of Defendants' negligence, Plaintiff and Class Members have suffered or will suffer damages.

147.   Defendants' breach of their common law duties to exercise reasonable care and Defendants' failures and negligence actually and proximately caused Plaintiff's and Class Members' actual and tangible injury-in-fact, and damages, including without limitation the improper disclosure of their confidential voter registration information and lost time and money incurred to investigate, mitigate and remediate the effects of unregulated distribution and sale of their confidential information that resulted from and was caused by Defendants' negligence, which

Class Action Complaint

injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

148.   Alternatively, Defendants' violation of state laws relating to voter registration is evidence of Defendants' breach of duty to exercise reasonable care in distributing and selling Plaintiff's and Class Members' confidential voter registration information.

149.   "Any application for voter registration information available pursuant to law and maintained by the Secretary of State or by the elections official of any county shall be made pursuant to [Election Code § 2188]."  Elec. Code § 2188(a).

150.   Any person who obtains voter registration information shall <u>not</u> "make any information available under any terms, in any format, or for any purpose, to any person <u>without receiving prior written authorization</u> from" the California Secretary of State. Such authorization will only be given "after the person to receive such information has executed the written agreement set forth in Section 19008." CCR § 19005.

151.   "It is a misdemeanor for a person in possession of [voter registration information] knowingly to use or permit the use of all or any part of that information for any purpose other than as permitted by law."  Cal. Elec. Code § 18109.

152.   Defendants violated CCR § 19005 and Elections Code § 18109 when Defendants distributed and sold California voter registration information without following the requirements set forth under CCR § 19005.  Defendant GC Strategies aided Defendant i360's scheme to profit off the unauthorized distribution of Californian voter registration information by applying and obtaining the data on i360's behalf.  Defendant i360 then distributed and sold the voter data to each of its clients through the i360 database.  Defendant Joe Leventhal knowingly continued this illegal use and distribution when he obtained the voter registration data from Defendant i360 without obtaining prior express approval in accordance with

Class Action Complaint

Elections Code § 2188 and further disseminated the voter data to his committee workers.

153.   Defendants' violations of CCR § 19005 and Elections Code §§ 2188 and 18109 actually and proximately caused Plaintiff's and Class Members' actual and tangible injury-in-fact, and damages, including without limitation the improper disclosure of their confidential voter registration information and lost time and money incurred to investigate, mitigate and remediate the effects of unregulated distribution and sale of their confidential information that resulted from and was caused by Defendants' violations of state law, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

154.   Defendants' violations of CCR § 19005 and Elections Code §§ 2188 and 18109 were a substantial factor in bringing about the harm suffered by Plaintiff and Class Members.

155.   The harm suffered by Plaintiff and Class Members resulted from an occurrence of the nature which CCR § 19005 and Elections Code §§ 2188 and 18109 were designed to prevent.   For example, Elections Code § 2188 was passed in response to a belief that state laws must be strengthened to prevent "impermissible uses of voter information, especially by secondary users."   Source: *Task Force on Voter Privacy: FINAL REPORT*, Presented to Secretary of State Kevin Shelley and Members of the Legislature, June 14, 2004, at p. 23, https://elections.cdn.sos.ca.gov/voter_privacy_final_report/intro_tfvp_final_report.pdf, (last accessed  May 21, 2021).

156.   Plaintiff and Class Members are within the class of persons for whose protection CCR § 19005 and Elections Code §§ 2188 and 18109 were designed to prevent.   *See* Cal. Elec. Code § 2157.1 ("It is the intent of the Legislature that a voter be fully informed of the permissible uses of personal information supplied by him or her for the purpose of completing a voter registration affidavit."); *see also Secretary of State Kevin Shelley Announces Recommendations from Task Force on Voter*

1 *Privacy*, June 15, 2004, https://admin.cdn.sos.ca.gov/press-
2 releases/prior/2004/04_039.pdf (last accessed May 21, 2021) ("Californians are
3 increasingly concerned about protecting their privacy . . . The Task Force made
4 recommendations that enhance the protection of private information contained in
5 voter files and ensure that voters receive vital information on how to protect
6 themselves from identity theft and other crimes.").

7     157.  Accordingly, Plaintiff and Class Members seek damages in accordance
8 with applicable law.

**Second Cause of Action**

**Public Disclosure of Private Facts**

11     158.  Plaintiff repeats the allegations contained in the foregoing paragraphs as
12 if fully set forth herein.

13     159.  Plaintiff brings this claim on behalf of herself and members of the
14 proposed Class and Sub-Class.

15     160.  Defendants, by distributing and selling Plaintiff's and Class Members'
16 voter registration information in disregard of applicable state law to countless
17 numbers of political candidates, campaigns, committee workers, and organizations,
18 effectively publicized private information concerning Plaintiff and Class Members.

19     161.  A reasonable person in Plaintiff's and Class Members' position would
20 consider the publicity of voter registration information highly offensive and
21 dangerous. The voter registration information included Plaintiff's and Class
22 Members' private information, such as their home address, telephone number, and
23 email address. This information essentially comprises an identity theft starter kit.
24 Distribution of this information also puts Plaintiff and members of the Sub-Class in
25 serious fear of their safety as a life-threatening condition was present, necessitating a
26 heightened confidential status of their private information.

27

28

162.   Defendants knew, or acted with reckless disregard of the fact, that a reasonable person in Plaintiff's and Class Members' position would consider the publicity of voter registration information highly offensive and dangerous.

163.   The private information was not of legitimate public concern.

164.   Defendants' wrongful conduct actually and proximately caused Plaintiff's and Class Members' actual and tangible injury-in-fact, and damages, including without limitation the improper disclosure of her confidential voter registration information and lost time and money incurred to investigate, mitigate and remediate the effects of unregulated distribution and sale of their confidential information that resulted from and was caused by Defendants' negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

165.   Defendants' conduct was a substantial factor in causing Plaintiff's and Class Members' harm.

166.   Accordingly, Plaintiff and Class Members seek damages in accordance with applicable law.

### Third Cause of Action

### Invasion of Privacy, Cal. Const. Art. 1, § 1

167.   Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

168.   Plaintiff brings this claim on behalf of herself and members of the proposed Class and Sub-Class.

169.   Plaintiff and Class Members have a legally protected privacy interest in the personal information provided in their California voter registration.  *See* CCR § 19005 (prohibiting unauthorized disclosure of voter registration information); *see also* Cal. Elec. Code § 18109 (unauthorized disclosure of voter registration information is a misdemeanor); Cal. Elec. Code § 2157.1 ("It is the intent of the Legislature that a voter be fully informed of the permissible uses of personal

information supplied by him or her for the purpose of completing a voter registration affidavit.").

170.   Plaintiff and Class Members have a reasonable expectation of privacy in their voter registration information.  *See* Cal. Elec. Code § 2157.2 (To fully inform voters of the permissible uses of personal information supplied on a voter registration affidavit, the permissible uses must be printed on the state ballot pamphlet and posted on local elections official website and the Secretary of State's website).

171.   Defendants' unauthorized disclosure of Plaintiff's and Class Members' voter registration information constitutes a serious invasion of Plaintiff's and Class Members' privacy.

172.   Accordingly, Plaintiff and Class Members seek damages in accordance with applicable law.

**Fourth Cause of Action**

**Violations of California's Unfair Competition Law**

**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

173.   Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

174.   Plaintiff brings this claim on behalf of herself and members of the proposed Class and Sub-Class

175.   The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.

176.   Defendants violated the unlawful prong of the UCL. The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

a.   California Elections Code § 2188

b.   California Elections Code § 18109

c.   California Code of Regulations § 19004

d.   California Code of Regulations § 19005

177. Defendants' actions also constitute negligence, public disclosure of private facts, and an invasion of privacy under the California constitution.

178. Defendants profited from their wrongful sale and distribution of Plaintiff's and Class Members' voter registration information.

179. Plaintiff and Class Members are likely to be damaged by Defendants' wrongful practices, as Defendants continue to illegally sell and disseminate their voter registration information to any person and/or entity without regulation and are otherwise free to continue to disseminate such information in violation of state law. Thus, injunctive relief enjoining this deceptive practice is proper.

180. Defendants' conduct caused and continues to cause substantial injury to Plaintiff and Class Members, who have suffered injury in fact as a result of Defendants' unlawful conduct.

181. Defendants GC Strategies and i360's conduct is also "unfair" because Defendants each profit from their unlawful disclosure of the personal information provided by Plaintiff and Class Members in their voter registration affidavit. Such conduct is immoral, unethical, unscrupulous, and substantially injurious to Plaintiff and Class Members and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

182. Defendants GC Strategies, i360, and Joe Leventhal's conduct with respect to their unlawful disclosure of Californian voter registration information is also unfair because it violates public policy as declared by specific constitutional, statutory and regulatory provisions, including but not limited the right to privacy under the California Constitution, California Elections Code §§ 2188 and 18109, and California Code of Regulations §§ 19004 and 19005.

183. In accordance with Bus. & Prof. Code § 17203, Plaintiff, on behalf of herself, the Class, and the general public, seek an order enjoining Defendants from continuing to conduct business through unlawful and unfair acts and practices.

Class Action Complaint

184.   Plaintiff, on behalf of herself and the Class also seek an order for the restitution of all monies expended due to Defendants' unlawful conduct and acts of unfair competition.

## PRAYER FOR RELIEF

185.   Wherefore, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendants as to each and every cause of action, and the following remedies:

a.   An Order declaring this action to be a proper class action, appointing Plaintiff as class representative, and appointing their undersigned counsel as class counsel;

b.   An Order entering judgment against Defendants for the causes of action asserted herein;

c.   An award of actual, nominal and/or statutory damages, punitive damages, prejudgment interest, and post-judgment interest, in an amount to be determined at trial;

d.   An award of restitution to Plaintiff and Class Members;

e.   An award of equitable, injunctive, and declaratory relief as may be appropriate;

f.   An award of all costs, including attorneys' fees and the costs of prosecuting this action, as allowed by law;

g.   Any other or further legal and equitable relief, as the Court may deem appropriate.

## JURY DEMAND

186.   Plaintiff hereby demands a trial by jury on all issues so triable.

Date: May 21, 2021          **LAW OFFICES OF RONALD A. MARRON**

By: */s/ Ronald A. Marron*

RONALD A. MARRON

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KAS L. GALLUCCI
MICHAEL T. HOUCHIN
LILACH HALPERIN
ELISA PINEDA
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorneys for Plaintiff and the Proposed Class***

Class Action Complaint